## McDANIEL v. HIATT.
### No. 215.

District Court, M. D. Pennsylvania.
July 2, 1948.

Robert B. Barker and Edward A. Martin, both of Washington, D. C., Thomas Byron Miller, of Wilkes-Barre, Pa., and Maurice V. Cummings, of Scranton, Pa., for petitioner.

Arthur A. Maguire, U. S. Atty., of Scranton, Pa., and Charles W. Kalp, Asst. U. S. Atty., of Lewisburg, Pa. (Major Thayer Chapman, of Washington, D. C., of counsel), for respondent.

FOLLMER, District Judge.

The petitioner, a military prisoner at the United States Penitentiary, Lewisburg, Pennsylvania, was convicted by a General Court Martial for a violation of Article of War 92, 10 U.S.C.A. § 1564, he having been charged thereunder with the premeditated killing of a woman by shooting her with a rifle. He now seeks a writ of habeas corpus. His petition is predicated upon two propositions, namely that the court as originally constituted, consisted of fourteen members, and seven of such members having been excused by the verbal orders of the Commanding General, the remaining seven did not constitute a majority of the court and therefore as a sequitur, that he was not found guilty by two-thirds of the members of the court. His further contention is that on the evidence in the case the court should have found him not guilty.

■ It appears from an examination of the record that a General Court Martial had originally been constituted under special Orders Number 130, dated May 30, 1945, consisting of fourteen members;[1] and that at this particular trial seven of such designated members sat, the others having been excused on verbal orders of the appointing authority. The seven members were sufficient to constitute the court and the record shows that he was found guilty of the Charge and Specification with " * * * two-thirds of the members of the court present when the vote was taken concurring," and that he was sentenced with "Three-fourths of the members of the

[1] Court-Martial Record pages 64 and 65.

court present when the vote was taken concurring, * * *."[2]

Article of War 5, 10 U.S.C.A. § 1476, provides that "General courts-martial may consist of any number of officers not less than five."[3] Supplementing the provisions of Article of War 5, it is provided in the Manual for Courts-Martial, U. S. Army,[4] that it is within the discretion of the appointing authority to make changes in the personnel appointed or detailed by him and that " * * * the proper commanding officer should make timely recommendations to the appointing authority as to relieving or adding members, * * *." In the present instance the appointing authority relieved, by verbal orders, seven members of the court as originally detailed by him, leaving seven members for the trial of this case. There were seven members at all times throughout the trial of the case, so that the court consisted of more than the minimum five required by the 5th Article of War.

Article of War 43, 10 U.S.C.A. § 1514, specifically provides that the required number concurring in a conviction or a sentence is " * * * of those members present at the time the vote is taken", consequently the court is duly constituted and the vote is valid provided at least five members are present at the time such vote is taken. Winthrop in his treatise on military law shows that such has long been the unquestioned interpretation of this provision.[5]

Petitioner contends that the verdict was based upon insufficient evidence and that the court-martial " * * * erred in not finding your petitioner not guilty." In this habeas corpus proceeding we are not concerned with the weight and sufficiency of the evidence, and do not retry the case to determine the guilt or innocence of the accused. It is not our province to attempt to re-evaluate the testimony on the cold record, or attempt to pass upon the credibility of the witnesses.[6]

I have however, carefully reviewed the file and after reading the evidence am convinced that this was nothing less than a cold-blooded murder, and the verdict of guilty was amply sustained by the evidence. There was direct evidence that McDaniel fired the shot which caused the death of the victim.

As an afterthought, it is now contended by counsel for the petitioner that because one witness (the medical officer), testified[7] that in the pool of blood at the victim's head—he found on the ground two things

---

[2] Court-Martial Record page 4.

[3] See also A Manual for Courts-Martial U.S. Army, 1928 (Corrected to April 20, 1943), page 2, paragraph 4.

[4] A Manual for Courts-Martial U. S. Army (supra), page 27, paragraph 37; and also see page 28, paragraph 38c.

[5] Winthrop's Military Law and Precedents, 2d Ed., 1920 Reprint, page 78 (*100–101) states inter alia:
"If the court begins with more than five members, the loss or absence of one or more does not affect its capacity provided at least five remain, and this rule applies through the entire life of the body. Thus five are sufficient to be re-assembled and to revise the sentence, though when it was originally adjudged, the court may have consisted of ten or thirteen members; and the sentence, as revised and finally adopted by the five, will be the sentence of the court. * * *
"A General court, though reduced below five, is not necessarily to be dissolved, nor can it assume to dissolve itself or declare itself dissolved. Such dissolving is a function of the convening commander, who is also empowered, in his discretion, to continue the court by adding a member, or the requisite number of members to bring it up to five, and when thus renewed, its power as a court is restored, and it may legally proceed with the trial."

[6] Application of Yamashita, 327 U.S. 1, 66 S.Ct. 340, 90 L.Ed. 499; Ex parte Smith, D.C. M.D. Pa., 72 F.Supp. 935; Bigrow v. Hiatt et al., D.C. M.D. Pa., 70 F.Supp. 826, affirmed 3 Cir., 168 F.2d 992; Miller v. Hiatt, 3 Cir., 141 F.2d 690; Eury v. Huff, 79 U.S.App.D.C. 289, 146 F.2d 17; O'Grady v. Hiatt, D.C. M.D. Pa., 52 F.Supp. 213, affirmed 3 Cir., 142 F.2d 558; Curtis v. Rives, 75 U.S.App.D.C. 66, 123 F.2d 936; Dorsey v. Gill, 80 U.S.App.D.C. 9, 148 F.2d 857; Wallace v. Hunter, 10 Cir., 149 F.2d 59; Lucas v. Sanford, 5 Cir., 145 F.2d 229; Burall v. Johnson, 9 Cir., 134 F.2d 614; Price v. Johnston, 9 Cir., 125 F.2d 806; Erwin v Hiatt, D.C. M.D. Pa., 53 F.Supp. 816; Schita v. Cox, 8 Cir., 139 F.2d 971.

[7] Court-Martial Record, Trial testimony page 24.

"* * * that looked like slugs from an Italian carbine", the murder could not have been committed by the accused.

The shot had been fired at fairly close range (within a room). The bullet had entered through the mouth, there was "* * * a front tooth broken off and a small groove about ·one inch long on the right hand side of the tongue, a small furrow, typical of one made by a bullet." At the point of exit "* * * there was a large wound about as big as a silver dollar in the back of the skull, * * *."[8] We are unable to follow counsel's conjecture that these two slugs prove conclusively that the one shot which was heard in the room where the accused was the only person with a rifle (pointed directly at the murdered woman) could not have been fired by him and have been the cause of her death. Moreover, the accused himself told another soldier shortly after the occurrence, that he had killed a woman.

The petition for the writ of habeas corpus is accordingly denied and the rule to show cause dismissed.

---

[8] Court-Martial Record, Trial testimony page 23.